UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Leonard Ferland</u>,
 Claimant

  v.         Case No. 11-cv-123-SM
           Opinion No. 2011 DNH 169
<u>Michael J. Astrue, Commissioner,</u>
<u>Social Security Administration</u>,
 Defendant

<u>**O R D E R**</u>

Pursuant to 42 U.S.C. § 1383(c)(3), Claimant, Leonard Ferland, moves to reverse the Commissioner's decision denying his application for Supplemental Security Income Benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq.  The Commissioner objects and moves for an order affirming his decision.

**Factual Background**

I. <u>Procedural History</u>

On June 11, 2008, claimant filed an application for Supplemental Security Income benefits under Title XVI, alleging that he had been unable to work since June 11, 2008.  He asserts eligibility for benefits on the basis of physical disabilities. His application was denied and he requested an administrative hearing before an Administrative Law Judge ("ALJ").

On June 25, 2010, claimant appeared by video before an ALJ, who considered claimant's application de novo.  An impartial vocational expert and claimant's attorney also appeared at the hearing.  On September 21, 2010, the ALJ issued his written decision, concluding that claimant retained the residual functional capacity to perform light work, subject to additional limitations.  Accordingly, the ALJ concluded that "claimant has not been under a disability . . . since June 11, 2008," as that term is defined in the Act.  Administrative Record ("Admin. Rec.") 19.  The ALJ's decision became the Commissioners' final decision on January 13, 2011, after the Decision Review Board failed to complete a timely review.

Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a remand for further administrative proceedings.  Doc. No. 1.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner."  Doc. No. 6.  In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner."  Doc. No. 9.  Those motions are pending.

II.  Stipulated Facts

Pursuant to Local Rule 9.1(d), the parties submitted a Joint Statement of Material Facts which is part of the court record.

2

Doc. No. 10.  The facts included in that statement will be referred to as appropriate.

## Standard of Review

I.  Properly Supported Findings by the ALJ are Entitled to Deference

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1]  See 42 U.S.C. §§ 405(g); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long

---

[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

as it is supported by substantial evidence."). <u>See also</u>
<u>Rodriquez v. Secretary of Health & Human Services</u>, 647 F.2d 218,
222 (1st Cir. 1981) ("We must uphold the [Commissioner's]
findings in this case if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion.").

In making factual findings, the Commissioner must weigh and
resolve conflicts in the evidence.  <u>See</u> <u>Burgos Lopez v. Secretary</u>
<u>of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984)
(citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)).  It
is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the
[Commissioner], not the courts."  <u>Irlanda Ortiz</u>, 955 F.2d at 769
(citation omitted).  Accordingly, the court will give deference
to the ALJ's credibility determinations, particularly when those
determinations are supported by specific findings.  <u>See</u>
<u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192,
195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health &</u>
<u>Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  <u>The Parties' Respective Burdens</u>

An individual seeking Social Security disability benefits is
disabled under the Act if he or she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(g). If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant. See Hernandez v. Weinberger, 493 F.2d

5

1120, 1123 (1st Cir. 1974); <u>Benko v. Schweiker</u>, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience.  <u>See, e.g.</u>, <u>Avery v. Secretary of Health & Human Services</u>, 797 F.2d 19, 23 (1st Cir. 1986); <u>Goodermote</u>, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

> (1)  whether claimant is engaged in substantial gainful activity;
>
> (2)  whether claimant has a severe impairment;
>
> (3)  whether the impairment meets or equals a listed impairment;
>
> (4)  whether the impairment prevents claimant from performing past relevant work; and
>
> (5)  whether the impairment prevents claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the
national economy, regardless of whether such work
exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).


With those principles in mind, the court reviews claimant's

motion to reverse and the Commissioner's motion to affirm his

decision.


## Discussion

I.   Background - The ALJ's Findings

The ALJ concluded that claimant was not under a disability

since June 11, 2008.  In reaching his decision, the ALJ properly

employed the mandatory five-step sequential evaluation process

described in 20 C.F.R. § 404.1520.  He first determined that

claimant had not been engaged in substantial gainful employment

since his alleged onset of disability.  Next, he concluded that

claimant has the severe impairments of "diabetes mellitus-Type II

with diabetic neuropathy and status post fracture of the left

shoulder."  Admin. Rec. 14.  Nevertheless, the ALJ determined

that those impairments, regardless of whether they were

considered alone or in combination, did not meet or equal one of

the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

Admin. Rec. 16.

Next, the ALJ concluded that claimant retained the residual functional capacity to perform "light work . . . except the claimant cannot climb ladders or scaffolds," and is "limited to occasional climbing of stairs/ramps and to occasional balancing, stooping, kneeling and crawling."  The ALJ further concluded that claimant "needs to avoid exposure to extreme cold/heat, vibration and to hazards including dangerous machinery and unprotected heights."  Admin. Rec. 16.  The ALJ concluded, therefore, that claimant "is unable to perform any past relevant work."  Admin. Rec. 18.  He found, however, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," such as fast food worker, counter attendant, cashier, and sales attendant.  Admin. Rec. 18-19.

Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act.  Admin. Rec. 19. Claimant, therefore, was deemed ineligible for benefits.

II.  <u>The ALJ's RFC Finding is Supported by Substantial Evidence</u>

The central dispute in this case is whether claimant can stand for six hours in an eight-hour day.  An occupational therapist opined that he cannot do so because of sensory and balance problems.  Admin. Rec. 461.  The ALJ, nevertheless, found as part of his RFC determination that claimant could do "light work," which includes day-long sitting and/or standing.  <u>See</u> 20

8

C.F.R. §§ 404.1567(b), 416.967(b) ("light work" entails lifting 10 pounds frequently or 20 pounds occasionally, or sitting most of the day with pushing or pulling, or, "a good deal of walking or standing . . . .").

The ALJ patterned his RFC finding on the August 2008 residual functional capacity assessment of the state agency reviewer, Dr. Fairly. <u>See</u> Dr. Fairly Report, Admin. Rec. 401-08. In his report, Dr. Fairly checked the box on the form indicating that claimant can "[s]tand and/or walk (with normal breaks) for a total of . . . about 6 hours in an 8-hour workday," and noted that he can "occasionally . . . climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." Admin. Rec. 402-03. Dr. Fairly discussed, albeit briefly, the medical support for his conclusions regarding claimant's postural limitations (which include balance), noting in particular, that claimant's pain is "controlled by Oxycodone, Neurontin," and that, despite his "sensory loss to below knees," "he is otherwise neurologically intact [and] has normal gait, station, posture." <u>Id</u>. at 403. Claimant argues that the ALJ's RFC is not supported by substantial evidence. Specifically, he contends that the ALJ should not have relied on Dr. Fairly's assessment because Dr. Fairly was a non-examining reviewer and because he did not review more recent medical records. Doc. No. 6-1, pgs. 3, 8.

Claimant's arguments are unavailing.  First, as a general matter, an ALJ may place "[g]reater reliance" on the assessment of a non-examining physician where the physician "reviewed the reports of examining and treating doctors . . . and supported [his] conclusions with reference to medical findings."  <u>Quintana v. Comm'r of Social Security</u>, 2004 WL 2260103, at *1 (1st Cir. 2004).  <u>See also</u> 20 C.F.R. § 404.1527(d)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.").  Here, it is clear from his report that Dr. Fairly relied on the most recent (at the time) medical report from claimant's treating physician assistant, Mr. Tony Petrillo. <u>See</u> Admin. Rec. 403.  There are no indications as to what additional records Dr. Fairly reviewed, but claimant has not argued that Dr. Fairly had an incomplete record before him at the time of his 2008 assessment.[2]  In light of this, and because Dr. Fairly did not merely "check[…] . . . boxes," <u>Berrios Lopez v. Secretary of Health & Human Services</u>, 951 F.2d 427, 431 (1st Cir.

---

2  Claimant does take issue with the fact that neither Dr. Fairly nor the ALJ discussed medical records dating back as far as 2003 which show abnormal glucose and creatinine readings.  Claimant argues that these readings "are an indication of plaintiff's energy and continuing problems controlling his diabetes."  Doc. No. 6-1, pg. 7.  But that is an inferential leap which, arguably, is contradicted by the medical evidence.  In medical notes from 2008 and 2009, for example, claimant's treating physician assistant, Mr. Petrillo, noted that claimant's diabetes was "stable."  Admin. Rec. 428, 432.

1991) (per curiam), but also provided a medical-based explanation for his conclusions regarding postural limitations, the ALJ, as a general matter, was entitled to rely on his assessment.[3]

In addition, the fact that Dr. Fairly did not review later medical records does not necessarily preclude the ALJ from relying on his RFC assessment. "It can indeed be reversible error for an administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record." Strout v. Astrue, Civil No. 08-181-B-W, 2009 WL 214576, at *8 (D. Me. Jan. 28, 2009) (citing Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)). However, an ALJ may rely on such an opinion where the medical evidence post-dating the reviewer's assessment does not establish any greater limitations, see id. at *8-9, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not "clearly inconsistent" with, the reviewer's assessment. See Torres v. Comm'r of Social Security, Civil No. 04-2309, 2005 WL 2148321, at *1 (D.P.R. Sept. 6, 2005) (upholding ALJ's reliance on RFC assessment of non-examining reviewer where medical records of treating providers were not "in stark

_____

3  Importantly, the ALJ relied not only on Dr. Fairly's 2008 RFC assessment, but also on the test results from the occupational therapist's 2010 functional capacity evaluation.  As discussed infra, the ALJ accepted the test results but rejected the therapist's opinion regarding standing tolerances for an eight-hour day.

disaccord" with the RFC assessment).  <u>See also</u> <u>McCuller v.</u>
<u>Barnhart</u>, No. 02-30771, 2003 WL 21954208, at *4 n.5 (5th Cir.
2003) (holding ALJ did not err in relying on non-examining
source's opinion that was based on an incomplete record where he
independently considered medical records dated after the non-
examining source's report).  In <u>Strout</u>, the court held that the
ALJ did not err in relying on the opinion of a non-examining
state agency medical reviewer who had not reviewed the full
record.  <u>Strout</u>, 2009 WL 214576, at *8-9.  The court upheld the
ALJ's decision because the evidence that was unavailable to the
non-examining source did not reflect a greater degree of
limitation than that assessed by the reviewer.  <u>Id</u>.  Here, the
ALJ reviewed the recent medical reports that were not available
to Dr. Fairly at the time of his 2008 assessment — including
later reports from Mr. Petrillo and the 2010 functional capacity
testing of occupational therapist Jeff Abrahamson.  <u>See</u> Admin.
Rec. 15-17.  The ALJ concluded that Dr. Fairly's assessment was
"consistent" with this "more recent" evidence. Admin. Rec. 17.


   "And now we come at last to the nub of the case."  <u>Oak Brook</u>
<u>Bank v. Northern Trust Co.</u>, 256 F.3d 638, 640 (7th Cir. 2001)
(Posner, J.).  Claimant's arguments come down, primarily, to this
contention: the ALJ's conclusion that Dr. Fairly's assessment is
consistent with the newer evidence is not supported by the
record.  According to claimant, the ALJ gave too little weight to

portions of recent medical records that were <u>inconsistent</u> with
Dr. Fairly's assessment.  Admin. Rec. 17-18.  The evidence to
which the ALJ gave little weight consists primarily of (1) that
portion of Mr. Abrahamson's functional capacity evaluation in
which he opines about claimant's ability to stand during an
eight-hour workday and (2) medical records evidencing pain and
fatigue.[4]  Claimant contends that these pieces of evidence are
entitled to greater weight, and, when properly credited,
undermine Dr. Fairly's assessment.  The Commissioner responds
that the ALJ properly exercised his discretion to weigh the
inconsistent evidence against the record as a whole and,
therefore, did not err in finding that that evidence did not
undermine Dr. Fairly's assessment.  <u>See</u> Admin. Rec. 17.

     The ALJ's decision to give little weight to the opinion
expressed by Mr. Abrahamson in his Functional Capacity Evaluation
and to the medical records containing evidence of pain and

---

4 Medical records also document other problems relating to
claimant's diabetes, such as poor kidney function and poorly
controlled blood glucose levels; significant dental issues; hand
tremors; and insomnia.  As the Commissioner correctly points out,
however, claimant has not explained how, for instance, the loss
of all lower teeth or insomnia (which is being treated with
medication) affects his ability to perform during an eight-hour
workday.  Moreover, to the extent that these conditions might be
said to indirectly support claimant's complaints of fatigue and
pain (because they are evidence of the severity of his diabetes),
the record, as the ALJ noted, contains evidence contradicting
claimant's allegations of disabling pain and fatigue.  Admin.
Rec. 17-18.

fatigue will be upheld if supported by substantial evidence in
the record.  Irlanda Ortiz, 955 F.2d at 769.

### Mr. Abrahamson's Functional Capacity Evaluation

In August, 2010, occupational therapist Jeff Abrahamson
conducted a Functional Capacity Evaluation.  Mr. Abrahamson's
evaluation consists of (1) test results and (2) his opinion
regarding claimant's ability to stand during an eight-hour
workday.

With regard to the test results, Mr. Abrahamson found that
claimant "demonstrated an ability to perform light level lifting,
with the exception of overhead lifting" over five pounds.  Jt.
Statement of Material Facts," Doc. No. 10, pg. 6.  The testing
also showed that claimant "demonstrated an ability to sit for 30
minutes at one time, and 2 hours total in the 3½ hour exam; to
stand for 25 minutes at one time, and 1½ hours total in the 3½
hour exam."  Id. at 7.  Mr. Abrahamson further noted that
claimant "was able to complete balance testing with his left leg
and eyes open for 20 seconds with upper body support; used his
upper extremity and left lower extremity in order to balance on
his right leg with eyes open for 20 seconds; and was unable to
take a single step with his eyes closed on the balance beam."
Id. 6-7.  Mr. Abrahamson further found that claimant's
performance during testing was "consistent" with the "sensory

deficits in his legs . . . a condition well documented in his medical chart . . . ."  Admin. Rec. 461-62.

Mr. Abrahamson also offered his opinion regarding claimant's standing and sitting tolerances for an eight-hour workday.  As noted, claimant was able to stand for 1½ hours during the 3½ hour evaluation.  Mr. Abrahamson opined, however, that claimant "could be expected to have the same sitting and standing tolerance for an eight-hour day due to balance and sensory issues in his leg." Jt. Statement of Material Facts, Doc. No. 10, pg. 7; see also Admin. Rec. 461.  Mr. Abrahamson's opinion about the limiting effects of claimant's balance problem was based, at least in part, on his observation that claimant supported himself "with both hands during the entire [treadmill] test," Admin. Rec. 469, and presumably also on the fact that claimant used upper body support during the balance tests.  Admin. Rec. 460-61.

The ALJ considered Mr. Abrahamson's evaluation and gave it "little weight."  Admin. Rec. 17.  He credited the test results which showed claimant "performed at the light to medium level, except for overhead reaching."  Id.  He gave little credence, however, to Mr. Abrahamson's opinion regarding claimant's ability to stand during a full workday.  Id. at 17-18.

15

Under the regulations, Mr. Abrahamson is not an "acceptable medical source." 20 C.F.R. §§ 404.1513(d) and 416.913(d). Nevertheless, his report is "'important and should be evaluated [by the ALJ] on key issues such as impairment severity and functional effects.'" Dumensil v. Astrue, Civil No. 10-cv-060-SM, 2010 WL 3070107, at * 5 (D.N.H. Aug. 4, 2010) (quoting SSR 06-03 p at *3). The ALJ must, therefore, "discuss at least some of [the] reasons" for the weight he accorded Mr. Abrahamson's opinion. Id.

The ALJ did so, offering several reasons for rejecting Mr. Abrahamson's opinion that claimant's standing tolerance for an entire workday would be the same as his tolerance during the 3½ hour evaluation: (1) "Mr. Abrahamson is not an accepted medical source"; (2) although Mr. Abrahamson found some "minor" discrepancy between claimant's perception of his abilities and his actual abilities, he nevertheless accepted claimant's subjective statements of pain and imbalance; (3) "[t]here is no support in the record for balance issues, with claimant's medical providers consistently noting that he has a normal gait and station." Admin. Rec. 18.[5]

_____

5 This case is unlike Dumensil, 2010 WL 3070107, at *5. In that case, the "non-acceptable" medical source — a treating physician assistant — had offered an opinion about claimant's ability to do work-related activities. This court remanded because the ALJ had provided no reasons for rejecting that opinion, other than the fact that the physician assistant was a non-acceptable medical source and because "her opinions are not supported by the medical

But claimant says those reasons are largely factually inaccurate.  To the extent that the record contains non-subjective evidence that claimant suffers from balance problems, claimant is correct.  Mr. Abrahamson's objective testing (to which the ALJ generally gave credence) shows that claimant used his upper and lower body to support himself during the twenty-second one-legged balance tests, and that he was putting in full-effort during the 3.5 hours of testing.  In addition, a 2001 treating physician note indicated some "decrease in balance" and "slight symptoms of imbalance."  Admin. Rec. 202.  But the ALJ is not entirely wrong that Mr. Abrahamson also relied on subjective evidence in reaching his opinion.  Mr. Abrahamson's observation that claimant held onto the treadmill supports during the entire treadmill test is an objective finding, but the inference he draws from that observation, i.e., that claimant supported himself because of a balance problem is somewhat subjective. Moreover, the record contains evidence contrary to Mr. Abrahamson's conclusion about the existence or severity of any balance problem.  As recently as April 2008, claimant's treating physician assistant, Mr. Petrillo, noted "normal gait and station."  Admin Rec. 17.  And in his several reports over the

---

evidence on record."  Id.  Here, the ALJ's reasons are not so conclusory, and thus, are sufficient to allow the court "to determine whether [his] discretion was exercised reasonably." Id. at *5.

years, Mr. Petrillo never mentioned any balance problems,
including in his 2008-09 reports.  <u>See</u> <u>Rose v. Astrue</u>, No. 3:08-
cv-485, 2009 WL 6093384, at *6 (S.D. Ohio Oct. 27, 2009) ("[I]n
contrast to the physical therapist's opinion, no other physician
of record indicated that Plaintiff is as limited as the physical
therapist described.").

     In addition, claimant's activities of daily living can
reasonably be viewed as inconsistent with a standing or balancing
problem of the <u>severity</u> described by Mr. Abrahamson.  Although
claimant testified that during his daily walks he "rest[s] at the
park," and that "his legs g[e]t shaky" after walking a couple of
blocks, he also testified that he "occasionally" takes a second
walk at night; cooks quick meals; shops; does chores including
meal preparation, dishes and laundry; and a few times a year goes
"4-wheeling" with his step-son.  Doc. No. 10 pgs. 8-9; Admin.
Rec. 17.  In addition, when asked by the ALJ whether he had "any
problems being on [his] feet standing or walking," claimant
mentioned that his legs get shaky when he walks, but did not
mention any problems with balance.  Admin. Rec. 35.

     The ALJ was entitled to resolve these evidentiary conflicts.
<u>Irlanda Ortiz</u>, 955 F.2d at 769.  In short, although the record
reasonably supports claimant's allegation of a disabling
limitation on his ability to stand, it also contains substantial

evidence supporting the ALJ's conclusion that Mr. Abrahamson's opinion regarding the severity of the limitation is not wholly credible.  See Evangelista v. Secretary of Health & Human Services , 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.") (quotation omitted) (alteration in original).


_Medical Reports Containing Statements of Pain and Fatigue_

Claimant argues that statements in medical records post-dating Dr. Fairly's assessment regarding the severity of his pain and his level of fatigue are inconsistent with Dr. Fairly's assessment, and therefore, the ALJ's RFC finding.  Those statements are claimant's self-reported complaints to physician assistant, Mr. Petrillo.  The ALJ considered claimant's allegations of the severity of his symptoms and found them not fully credible in light of the totality of the medical evidence and evidence of claimant's daily activities.  Admin. Rec. 17-18.[6] The ALJ's resolution of these evidentiary conflicts is entitled to deference, Irlanda Ortiz, 955 F.2d at 769, and his

_____

6  Both Dr. Fairly and the ALJ considered claimant's allegations of fatigue.  Dr. Fairly noted a secondary diagnosis of fatigue, Admin. Rec. 401, and the ALJ noted that claimant reported fatigue to his primary care provider, physician assistant Petrillo, in August 2008.  Admin. Rec. 15.

determination that claimant's complaints are not fully credible is supported by substantial evidence.  Accordingly, to the extent that Dr. Fairly's assessment is inconsistent with more recent medical records containing claimant's complaints of pain and fatigue, it is not undermined, and the ALJ did not err in relying on it.

For these reasons, the court finds that the ALJ's RFC finding is supported by substantial evidence.

III.  <u>ALJ's Hypothetical to the ALJ</u>

Claimant's remaining argument — that the ALJ's hypothetical to the vocational expert failed to include all of his limitations — is easily rejected.  Because substantial evidence supports the ALJ's RFC finding, his hypothetical to the vocational expert, which included all of the limitations articulated in his RFC, was based on relevant "inputs."  <u>See</u> <u>Arocho v. Secretary of Health & Human Services</u>, 670 F.2d 374, 375 (1st Cir. 1982) ("[I]nputs into [the] hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.").  <u>See also</u> <u>Swanick v. Apfel</u>, No. Civ. 99-293-M, 2000 WL 1507421, at *9 (D.N.H. July 25, 2000) ("Since the ALJ did not err in discounting claimant's subjective complaints of fatigue, his failure to include that limitation in his hypothetical question to the vocational expert does not constitute error.").

Accordingly, the court finds that the ALJ did not err in relying on the vocational expert's answer to the hypothetical posed.


## Conclusion

Claimant's motion to reverse the decision of the Commissioner (document no. 6) is denied.  The Commissioner's motion to affirm his decision (document no. 9) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 31, 2011

cc:  Bennett B. Mortell, Esq.
     Gretchen L. Witt, Esq.